No. 4941.

(Court of Appeal, Parish of Orleans.)

## MRS. EMMA WESTPHOL SMITH vs. CUMBERLAND TELEPHONE & TELEGRAPH COMPANY.

P. H. Mentz for plaintiff and appellants.

Denegre & Blair and Leovy for defendant and appellee

ST. PAUL, J.—Plaintiff seeks to recover damages for injuries sustained by falling into a hole or depression in a sidewalk in the town of New Iberia.

The description of the locus and circumstances connected with the presence of the hole or depression at the place and time of the accident are substantially as follows:

At that time, and for some months previous thereto, defendant was reconstructing its lines in that part of the State. This reconstruction was being done by two gangs of workmen, one of which dug the holes and placed the poles; the other strung the wires. The first gang dug the holes and placed the poles at New Iberia, filled the holes with earth and then moved on. The other gang was delayed some months at Lafayette. It was whilst waiting for the arrival of this gang that the accident occurred.

At the point where the hole or depression was situated the sidewalk was about nine feet wide from curb to property line. A Shillinger strip five and a half feet wide ran along the curb, leaving a space unpaved three and a half feet wide nearest the property line and about level with the pavement. To dig the hole and place its pole defendant cut a space in the Shillinger six feet long and three feet wide, extending from the curb inward leaving clear about two and a half feet of Shillinger pavement and the unpaved strip above mentioned. The hole had been filled but the filling had sunk until at the side nearest the Shillinger the depression was some three inches or more below the level thereof, and somewhat deeper toward the curb.

Defendant had been notified a number of times by the Mayor and City Attorney to fill this hole and others properly; the town council had passed an ordinance directing it to do so, but, by permission of the mayor, with the consent of individual members of the council (of doubtful validity) defendant was permitted to disregard the ordinance until the arrival of the gang from Lafayette, after which defendant would be able to have the work permanently, properly and cheaply done by contract; but the condition was expressly stated that the holes were to be kept filled up in the meanwhile. The condition seems, however, to have been disregarded, at least as to the hole in question.

Meanwhile this hole, which was across the street from and within 300 feet of defendants office and plainly visible therefrom, was seen very nearly every day by its "troubleman," and was passed twice every day by defendant's manager, who could see the same plainly, and no doubt he has even walked into it, though he does not actually remember having done so.

On the 25th of November, 1906, plaintiff fell into the hole; her testimony is that she had never seen it before that day. She had passed it when going to church, and it was when returning, about noon, that she fell into it. She was walking with several ladies at the time, some in front, some behind, and some alongside of her. She was on the outside—that is, nearest the curb. Some gentleman was coming up behind her, and, to let him pass she stepped aside, and fell into the hole.

It is claimed that the hole had been there so long that plaintiff must have known it was there; that it was so large she must have seen it, at least, she might and would have seen it had not some negligence or want of care on her part intervened to prevent her from doing so; and we are left to infer that she was probably in conversation

with her friends and paying no attention to the pathway in front of her.

Even were we to assume, in the face of plaintiff's testimony, that this were true, we fail to perceive therein any contributory or other negligence whatever. We do not think that pedestrians using the public streets are required to examine and mark every step of the way, they are entitled to assume that the streets of a city, especially the paved portions thereof, are safe. The streets are for the use of all persons, those who go thereon for relaxation and pleasure, as well as those whose business calls them there. It is not negligence for persons to walk several together, or converse with each other whilst walking, even though, for the time being, their attention be directed away from the path in front of them. Nor is a person required to note and keep in mind every depression in the path or pavement near which he may chance to pass.

We think that no other care is required of those who use the public streets than that they shall use them for the usual purposes and in the usual way; it is only when an obstruction is actually perceived that due care must be taken to avoid it.

In the case at bar, granting that plaintiff had seen the hole as she passed it an hour or two before, we do not think she was obliged to keep the precise location and extent thereof uppermost in her mind with a view to avoid it as she passed it. It was no negligence on her part when she stepped aside to let some one pass her by, that she should not, at the moment, remember that she was just then at the place where she had seen a hole a short while before. This would, in effect, be demanding the very highest degree of care of those for whom the street is primarily intended, and excusing on slight pretext the negligence of those who place obstructions in

the streets for their own exclusive benefit. And extremes will have been reached, if such a doctrine is so applied that the greater the obstruction and the longer it remains, the greater the care required on the part of the public.

We think that defendant was clearly and grossly negligent and plaintiff free from fault. She is entitled to recover.

The evidence shows that plaintiff was severely injured, and the consequences of her injuries have extended over a considerable period of time. She was a woman 48 years of age, and weighing 200 pounds. She had both ankles and both wrists sprained, and her shoulder and back were injured. She received a severe shock to her nervous system and suffered acutely, she was confined to her bed and room for a month, and to her house for three months longer. She still suffers at times from the injuries received and from the consequences of the nervous shock. This is her testimony, fully corroborated by that of her physician.

The District Judge allowed plaintiff $750.00 and she appeals. We think the amount allowed was inadequate and should be substantially increased. In our opinion she is entitled to at least double that amount.

It is, therefore, ordered that the judgment appealed from be amended by increasing the amount allowed plaintiff from $750.00, to fifteen hundred dollars, and, as so amended, the judgment is affirmed at appellee's cost.

March 21, 1910.

### On Rehearing.

DUFOUR, J.—This application was filed more than six

judicial days after the rendition of the decree in this court.

Upon the suggestion that Act 223 of 1908 extended the delay to fifteen calendar days because of the constitutional declaration that the rules of procedure shall be the same in all appellate courts, so far as applicable, we certified the question to the Supreme Court.

The answer was that the act mentioned was exclusively confined to the Supreme Court, and that the delay for applying for rehearings in the Court of Appeal for Orleans was still six judicial days.

Hence, the present application was not timely and will not be considered.

Application dismissed.

May 2, 1910.

May 10, 1910, decree Supreme Court.